IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JARED O. SPEIR,**

        **Plaintiff,**

v.                                              **CIV 04-0965 LAM**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security Administration,**

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 9*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 10*), Defendant's response to the motion (*Doc. 11*), Plaintiff's reply to the response (*Doc. 12*), and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion **DENIED**.

## I.  Procedural History

    Plaintiff, Jared O. Speir, applied for Disability Insurance benefits and Supplemental Security Income payments on June 4, 2002 (with a protected filing date of April 17, 2002). (*R. at 62-64, 192-193*.) In connection with his application, he alleged a disability since March 18, 2002. (*R. at 62,*

*192.*) In connection with his application, Plaintiff alleged a disability due to injuries to his lower extremities sustained in a motor vehicle accident. (*R. at 45, 90.*) Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 38, 39.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on November 18, 2003. (*R. at 203-230.*) Plaintiff was present and testified at the hearing. (*R. at 207-.*) Plaintiff was represented by counsel at the hearing. (*R. at 203, 205.*) On February 19, 2004, the ALJ issued his decision in which he found that Plaintiff was not disabled at step five of the five-step sequential evaluation process set forth in 20 C.F.R. §§ 416.920, 404.1520. (*R. at 16-25.*) The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through June 30, 2003; (2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has "severe" impairments pursuant to the requirements in 20 C.F.R. §§ 416.920(c) and 404.1520(c);[1] (4) the medically determinable impairments do not meet or medically equal one of the list impairments in Appendix 1, Subpart P, Regulation No. 4; (5) the claimant's allegations regarding his limitations are not totally credible; (6) claimant has the residual functional capacity (hereinafter "RFC") to perform a restricted but significant range of sedentary to light exertional level work;[2] (7) claimant is unable to perform any of his past relevant work; (8) claimant

---

[1]The ALJ found that Plaintiff had severe impairments due to the residual effects of a grade II/III open fracture of his right calcaneus (heel) and a fracture of his left tibia-fibula. (*R. at 23.*) Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.920(c), 404.1520(c).

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

is a "younger individual between the ages of 18 and 44"; (9) claimant has a "high school education"; (10) claimant has no transferable skills from any past relevant work; (11) claimant's exertional limitations do not allow him to perform the full range of sedentary and light work, but using Medical-Vocational Rules 201.27 and 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform; and (12) claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. *(R. at 23-24.)*

After the ALJ issued his decision, Plaintiff filed a request for review. (*R. at 10-12.*) On June 23, 2004, the Appeals Council issued its decision denying his request and upholding the decision of the ALJ. (*R. at 5-8.*) On August 26, 2004, Plaintiff filed his complaint in this action. (*Doc. 1.*)

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  This Court's assessment is based on a

---

duties.  20 C.F.R. §§ 404.1567(a), 416.967(a).  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).

meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214.

A claimant has the burden of proving his or her disability,[3] which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step process for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Pt. 404, Subpt. P, App.1[4]; and he is unable to perform work that he has done in the past. *See Reyes v.*

---

[3]*See Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[4]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. § 404.1509 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520 (d).

*Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity (hereinafter "RFC"), age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

At the time of the hearing, Plaintiff was twenty years old and, therefore, defined as a "younger person" whose age would not seriously affect his ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). Plaintiff graduated from high school. *(R. at 213.)* During the fifteen year period prior to the ALJ's decision, Plaintiff worked as a general laborer (including roofer, car wash attendant, and lumber yard laborer) and a delivery driver for a drug store. *(R. at 79-83.)*

On March 18, 2002, Plaintiff was treated at Artesia General Hospital after being injured in an automobile accident and sustaining left leg and right foot fractures. *(R. at 129-134.)* After being stabilized, Plaintiff was transferred to Carlsbad Medical Center with fractures of the distal tibia and distal fibula, a comminuted fracture of the calcaneus[5], and lacerations to his right upper arm. *(R. at 130, 133, 134.)* At Carlsbad Medical Center, Plaintiff's left tibia was stabilized with an intermedullary rod and the left fibula and lateral malleolus fracture was stabilized with a single intermedullary screw. *(R. at 136.)* The right open calcaneus fracture was drained and skeletal traction was applied. *(Id.)* Plaintiff was discharged on March 20, 2002 and referred to University Medical Center in Lubbock for definitive stabilization of the open calcaneous fracture. *(Id.)*

---

[5]Comminution is a breaking into several pieces. *Steadman's Medical Dictionary* 386 (27th ed., Lippincott Williams & Wilkins 2000). The calcaneus is the heel bone. *(Id*. at 266.)

On March 29, 2002, Plaintiff underwent an open reduction and internal fixation of the calcaneus fracture at Texas Tech University Health Science Center. *(R. at 167.)* On April 10, 2002, Plaintiff returned to the Children's Orthopaedic Center and his progress was evaluated by David Godfried, M.D. *(Id.)* Dr. Godfried stated that Plaintiff was doing well, getting around in a wheelchair and reported only minimal discomfort. *(Id.)* Plaintiff was allowed to begin weightbearing on his left leg but remained strictly non-weightbearing on the right lower extremity. *(Id.)*

On April 29, 2002, Dr. Godfried noted Plaintiff had no problems, the incisions were healing and Dr. Godfried removed the pin and plantar sutures. *(R. at 165.)* Plaintiff was allowed crutches for activities of daily living but remained non-weightbearing on the right extremity. *(Id.)* On June 10, 2002 Plaintiff reported he was doing well, had no problems, and was using a 3D boot for walking. *(R. at 162.)* Dr. Godfried noted Plaintiff's plantar wound was healed and allowed Plaintiff to begin partial weightbearing on June 29th, with the 3D boot. *(Id.)* X-rays taken on July 8, 2002 indicated good healing process of the comminuted fracture of the calcaneus and unchanged bony alignment of the ankle joint. *(R. at 163.)*

On September 30, 2002, Eugene J. Dabezies, M.D. conducted a follow-up evaluation of Plaintiff and noted that "[x]-rays of the left tibia and fibula show a solidly healed fracture. . . . The calcaneus on the right shows some collapse as noted on previous x-rays. Otherwise, the fusion appears to be solid." *(R. at 157.)* Dr. Dabezies removed the screw from Plaintiff's right foot calcaneus on October 9, 2002. *(R. at 154.)* On October 21, 2002, Dr. Dabezies noted that Plaintiff had no complaints, was not using any pain medication, and "the foot looks very good." *(R. at 153.)* Plaintiff was "released back to regular activities," with follow up as needed. *(Id.)*

A Physical Residual Functional Capacity Assessment conducted by an agency physician on May 8, 2003 found that Plaintiff had some exertional limitations (limited to occasionally lifting and/or carrying 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking about 6 hours in an 8-hour workday; sitting for a total of about 6 hours in an 8-hour workday; and unlimited push and/or pull ability) and postural limitations (limited to occasionally climbing and crouching and limited to frequently balancing, stooping, kneeling, and crawling). *(R. at 180-181.)* Plaintiff had no manipulative, visual, communicative, or environmental limitations. *(R. at 182-183.)* The physician concluded that "[c]laimant's residual pain from calcaneal fracture will limit lifting and prolonged standing/walking. Based on the medical evidence, claimant appears capable of light work activities." *(R. at 184.)*

Following an examination on November 14, 2003, Leon Cohen, D.P.M. (foot and ankle physician) evaluated Plaintiff's medical condition in a letter to Plaintiff's attorney. *(R. at 190-191.)* Dr. Cohen stated that Plaintiff complained of severe pain in his right foot that prevented him from walking more than a few blocks and of back pain that Plaintiff felt was secondary to the right foot pain. *(R. at 190.)* Dr. Cohen observed limited mobility and flexion in Plaintiff's right foot, early hammertoe deformities, and severe pain under the right heel, right arch, and the scarred area along the right lateral ankle. *(R. at 190-191.)* Dr. Cohen attributed Plaintiff's condition to "[p]ost traumatic sequelae of the right foot. Pain which is very often severe and disabling causing inability to ambulate effectively." *(R. at 191.)*

## IV.  Discussion/Analysis

Plaintiff alleges that the ALJ erred at steps three and four of the sequential analysis. Specifically, Plaintiff asserts that the ALJ erred in: (1) rejecting Dr. Cohen's opinions; (2) finding that Plaintiff's impairments did not meet or equal Listing of Impairments 1.06; and (3) considering Plaintiff's enrollment in vocational rehabilitation as evidence weighing against his credibility.  Plaintiff asks the Court to reverse and remand for a new hearing.  Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

### A.  Dr. Cohen's Opinions

Plaintiff alleges that the ALJ erred in not giving greater weight to the findings and opinions of Dr. Leon Cohen. *(Plaintiff's Memorandum, Doc. 10 at 7-10.)*  In assessing medical opinions, the ALJ must consider any medical opinions from acceptable medical sources including treating sources, non-treating sources, and non-examining sources.  20 C.F.R. §§ 404.1502, 416.902.  The weight given to medical sources varies depending on specific factors, including:  (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the physician's opinion is supported by the relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Treating sources are physicians who have provided medical treatment or evaluation and who have, or have had an ongoing treatment relationship with the claimant.  *(Id.)*  A physician who has treated or evaluated a claimant only a few times may be considered a treating source, however, if the

relationship is not based on the claimant's need for medical treatment, but on a need to obtain a report in support of a claim for disability, the physician will be considered a non-treating source. (*Id.*) Non-treating sources are physicians or other acceptable medical sources who have examined a claimant but do not have, or did not have, an ongoing treatment relationship with a claimant. (*Id.*)

Plaintiff admits that Dr. Cohen was not a treating source, but merely an examining source. *(Plaintiff's Memorandum, Doc. 10 at 8.)* The ALJ's decision reviewed Plaintiff's medical records and determined that he could not give much weight to Dr. Cohen's opinion. The ALJ gave specific reasons for this determination including the fact that Dr. Cohen saw Plaintiff on only one occasion, was "essentially repeating the claimant's allegations regarding his pain and limitations," and that Dr. Cohen's opinion was inconsistent with the opinion of Plaintiff's treating orthopedic surgeon and Plaintiff's own testimony. *(R. at 19.)* The ALJ found "much more persuasive the opinion of the claimant's treating orthopedic surgeon Dr. Dabezies that the claimant can return to 'regular activities' and the opinion of the nonexamining state agency physician Mark Werner, M.D., that the claimant has the ability to perform light work." *(Id.)*

Medical sources may offer opinions about whether a claimant is disabled or unable to work; however, these decisions are administrative findings reserved to the Commissioner. *Social Security Ruling* 96-5p at *2,*5; 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The Commissioner is responsible for making the decision about whether a claimant meets the statutory definition of disability and whether a claimant's impairment meets or equals the requirements of any impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ properly rejected Dr. Cohen's opinion that Plaintiff's right lower extremity pain caused an "inability to ambulate

9

effectively" because Plaintiff's limitations did not meet the definition of this phrase as stated in 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(B)(2)(b).[6]

The evidence supports the ALJ's decision to assign little weight to the opinion of Dr. Leon Cohen. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992) (stating that it is within the province of the ALJ to weigh the medical evidence and discount it for specific and legitimate reasons). The Court concludes that the ALJ adequately considered the requisite factors in his decision and that the ALJ's decision provides factually supported and legally sufficient reasons for rejecting the opinion of Dr. Leon Cohen.

---

[6] The "inability to ambulate effectively" is defined in the regulations as:

  (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

  (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1)-(2).

## B.  Plaintiff's Impairments Did Not Meet or Equal Listing of Impairments § 1.06

Plaintiff alleges the ALJ erred in finding that his impairments did not meet or equal Listing of Impairments 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06, for "[f]racture of the femur, tibia, pelvis, or one or more of the tarsal bones."  *(Plaintiff's Memorandum, Doc. 10 at 10-12.)*  Based on Dr. Cohen's statement that Plaintiff suffered pain that was severe and disabling and that caused an inability to ambulate effectively *(R. at 191)*, Plaintiff claims that the ALJ erred in finding his impairment did not meet or equal the Listing at § 1.06. *(Plaintiff's Memorandum, Doc. 10 at 10-12.)*

At step three, a claimant has the burden of proving his or her disability *(Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)), which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant will not be found disabled at step three unless he can show that he meets or equals all of the requirements of the particular listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (an impairment does not meet or equal listing if it has only some of the medical criteria, no matter how severe).

The requirements of Listing § 1.06 are:

Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.  With:

> A.  Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and
> B.  Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06.

Plaintiff was injured in an automobile accident on March 18, 2002 and by September 30, 2002, x-rays showed solid healing of the left tibia and fibular fractures. *(R. at 157.)* X-rays of the right calcaneus fracture indicated "some collapse" but with *solid fusion*. *(Id.)* On October 21, 2002, Dr. Dabezies noted that Plaintiff had no complaints, was not using any pain medication, and that the "foot looks very good." *(R. at 153.)* At that time, Plaintiff was released back to regular activities and follow up was only as needed. *(Id.)* After a review of the medical evidence, the ALJ found that the "fractures of the claimant's left leg and right calcaneus healed in less than 12 months, and he returned to full weight bearing, without the need for a crutches [*sic*], a cane, or any other assistive device, in less than 12 months. (Ex. 3F/2) In fact, he was discharged from his treating surgeon's care and released to regular activities in October 2002, less than 9 months after his accident." *(R. at 19.)*

As stated above, the Commissioner is responsible for making administrative decisions about whether a claimant meets the statutory definition of disability and whether a claimant's impairment meets or equals the requirements of any impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Plaintiff's reliance on Dr. Cohen's evaluation is misplaced as the ALJ properly rejected Dr. Cohen's opinion. The accepted medical evidence from Plaintiff's orthopedic surgeon and subjective evidence from Plaintiff's testimony indicate Plaintiff "is fully weight bearing and ambulates without the use of any assistive device," and has engaged in strenuous work activities. *(R. at 19.)* Following his recuperation, Plaintiff worked at a car wash and part-time as a roofer. *(R. at 208-212.)* As a helper on roofing jobs, Plaintiff works ten to twenty hours a week doing light work including shoveling debris, placing foam insulation boards, pushing wheelbarrows, and cleaning up job sites. *(R. at 208, 223.)* Plaintiff also consulted with the New Mexico Division of Vocational Rehabilitation for help in attaining suitable employment. *(R. at 112-123.)* All the above activities

indicate Plaintiff is capable of ambulation sufficient to initiate, sustain and complete activities of daily living, albeit with a limp.

The record indicates Plaintiff's impairment did not meet either requirement of Listing § 1.06 because there was a solid union of the calcaneus fracture and a return to effective ambulation in less than nine months after the accident. The Court finds that the ALJ considered the severity of Plaintiff's impairment and based on the objective medical record, Plaintiff's testimony and the requirements of the listings, properly determined Plaintiff's impairment did not meet or medically equal Listing of Impairments § 1.06.

### C. Plaintiff's Credibility

Plaintiff alleges that the ALJ erred in considering Plaintiff's enrollment in a vocational rehabilitation program as "an evidentiary basis for impugning the credibility of the claimant about his functional limitations." *(Plaintiff's Memorandum, Doc. 10 at 12-15.)*

In evaluating a claimant's subjective symptoms, an ALJ's findings on credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The Tenth Circuit requires an ALJ's credibility finding to be linked to substantial evidence. *(Id.)* But *Kepler* does not require a "formalistic factor-by-factor" recitation of the evidence; instead, all that is required is that the ALJ set forth the specific evidence he relies on in evaluating the claimant's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The Tenth Circuit has also "emphasized that credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quotation omitted).

The ALJ reviewed Plaintiff's medical records and noted that on his final visit to Dr. Dabezies, Plaintiff had no complaints and was released back to regular activities. *(R. at 21.)* Plaintiff takes only non-prescription pain medications and has made several work attempts. *(Id.)* These work attempts included work as an attendant at a car wash and part-time as a roofer. *(Id.)* The ALJ noted that although neither work attempt constituted substantial gainful activity, "it [did] indicate that the claimant is capable of performing substantial gainful activity, especially at a sedentary to light exertional job." *(Id.)*

The ALJ also considered Plaintiff's request for training from the Division of Vocational Rehabilitation. *(R. at 21.)* Contrary to Plaintiff's allegations, the ALJ did not use this request to impugn the Plaintiff's credibility, but as an indication that the Plaintiff "himself believes that he is capable of returning to work at a less strenuous level." *(Id.)*

The ALJ considered all of Plaintiff's symptoms and the extent to which Plaintiff's symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and *Social Security Ruling 96-7p*. *(R. at 19-22.)* In the assessment of Plaintiff's credibility, the ALJ found that "the claimant's testimony as to the extent, intensity, and duration of subjective symptoms and resulting limitations is credible only to the extent that he is limited to a restricted range of sedentary to light exertional level work . . . ." *(R. at 21.)*

The Court will not reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991) (quotation omitted). The ALJ's finding that Plaintiff's allegations regarding his limitations are not totally credible is supported by substantial evidence in the record.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 9*) is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**